The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye. The United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. Very well. Thank you to both counsel for appearing this afternoon. Madam Clerk, please call the case for argument. 20-3687 from the Southern District of Iowa, United States v. Angela Garges. Very well. Mr. McGough, we'll hear from you first. Thank you. May it please the Court, my name is Jim McGough. I am CJA attorney appointed on behalf of Angela Garges. This case presents a question about the validity of a protective sweep. Cases require that in order for a valid protective sweep, a couple of things have to be present, but specifically, there has to be specific and articulable facts to support a belief that an area to be searched harbors an individual that poses a danger to officers or others. Well, counsel, isn't that the second prong in the buoy? I mean, do you agree that there's a difference between the first buoy prong and the second prong, or do you view those as the same? In other words, is this, if there's an immediate area where someone might be hiding, do you need specific factors? Does an officer need specific factors suggesting there's a danger? My understanding is you don't, but I'd like your views on that. I would say they do. I think that all of the cases that discuss the applicability or the unconstitutionality of a protective sweep all do so under the umbrella of specific and articulable facts. But that's not what buoy says on its own terms. It has two different options, and the first is an immediate adjacent area where someone could attack the officers, and it seems to me that's different. So my question is, why doesn't buoy prong one, as I phrased it, apply here? Because, well, if they are to be taken as two separate prongs that are individual theories of proceeding, the first prong, it's our position, the first prong doesn't apply because the bathroom area where the indicia of drug activity was seen was not immediate adjacent to the area in which Mr. Byers was arrested. And why is that specifically? In other words, where specifically did the arrest occur? Yeah, there's some question about that, and the record's not clear about it. A number of different officers testified at the hearing. The first officer that testified, I believe it was Officer Davis, testified that Byers exited the room and then he was taken into custody on cross-examination. I attempted to get into specifics of that, and he said he was placed into cuffs at the doorway. The other officers that were called to testify all said that he exited the room and then he was detained and apprehended. So the record, admittedly, the record's not clear as to what precise area he was taken into custody or placed under arrest when the handcuffs were put on him. So let me ask you this, does it matter if he was one foot inside the threshold inside the hotel room, if he was under the threshold or under the door, or if he was one foot outside? Is that a legally significant factor, and if so, what's the case that says it is? Because Brewe talks about the immediate risk to the officers, I think, under what I'd call prong one, and I'm not sure it's clear to me why one foot or two feet makes a difference for that analysis, and maybe it does, maybe there's a bright line here. But what is the case that suggests that one or two feet matter here? Well, I'm certainly not arguing that one or two feet do matter. What I'm arguing is that the record here is not complete. There's a picture in the government's brief that shows a view inside of the room. The only evidence that the government offered at the hearing about the bathroom was that it was to the left once you went inside of the hotel room. But I don't know what the measurements are of how far that hallway is. I don't know how far to the left that is. And so it's impossible to tell from this record if the bathroom is in the quote immediate adjacent areas required by that first prong. So you don't think it necessarily matters if he was in or outside the door? You just think the record here is insufficient on the distance? I think that's accurate. In regards to what they saw in the hotel bathroom, yes. I think that's whether he's in the doorway or out in the hallway. I don't know that it matters as far as what the distance is to the bathroom to be able to qualify it as the immediate adjacent area. Which I think is really what you're asking under prong one. So the evidence at the hearing about was there any movement seen inside of the room? Were there any noises heard inside of the room? Was there any evidence provided by anybody at the hotel in the Crimestoppers tip or any past knowledge of either my client or Mr. Byers who was the subject of the arrest warrant? Whether or not there was anything in any of those areas to support a reasonable belief that somebody was in the room that could have posed a danger to officers. And the evidence was lacking on all of that. There was no evidence of any of that to support any reasonable belief. The best the officers could testify about, the government's best evidence, was that we just didn't know how many people were in the room. And if that's the rule, then you don't need specific or articulable facts because officers are never going to know who's all in any hotel room or any house. But the courts have been very careful in saying you have to come with something. You have to have some specific or articulable facts to support a reasonable belief other than just we don't know if maybe there's somebody else hiding. And it's for those reasons that the defendant's motion should have been granted. I'll entertain any questions at this point. Well, I would ask to reserve the remainder of my argument for rebuttal. All right. Very well. Mr. Essley, we'll hear from you. Thank you, Your Honor. May it please the court. This court should affirm the district court's denial of Ms. Gargas' motion to suppress evidence obtained during the search of her motel room. As this court is aware, it may affirm on any ground supported by the record, and as long as any reasonable view of the evidence supports the district court's decision, this court should affirm. Here there are three alternatives that this court could use to affirm the district court's decision. And I'll start with what Mr. McGow discussed primarily during his argument, which is the first prong under Bowie. That is a separate and authorized form of protective sweep authorized by Bowie. In that case, the Supreme Court said that as a precautionary matter and without probable cause or reasonable suspicion, incident to an arrest, police officers can look in closets and other spaces immediately adjoining the place of arrest that are large enough to harbor another individual. Well, counsel, what does immediately adjoining mean here, and where did the arrest occur here? Well, for Fourth Amendment purposes, Your Honor, the arrest occurs, and Mr. Byers here was seized and in custody when a reasonable person would have understood based on the police conduct that he was not free to ignore the police officer's instructions and go about his business. In this case, that occurred when Mr. Byers was being ordered and commanded by the officers, four police officers joined by a canine unit at 745 in the morning to exit the motel room he was present in at that point. Was he told at that point that you're under arrest, come out of the room, or what was he told? I believe the record, and I will specifically point you to Suppression Transcript pages 11 and 12. It's sprinkled throughout, but 11 and 12 I think does the best job. The officers seem to just be saying he was instructed and ordered and commanded to come out of the room. I'm not sure if he was told at that moment he was being taken into custody, but he understood at that point he needed to follow the officer's instructions, and thus at that point he showed himself to the officers and exited the room. The D.C. Circuit case of Thomas is similar in this regard. In that case, the D.C. Circuit held that although the formal arrest occurred in the living room of the one-bedroom apartment, the Fourth Amendment arrest occurred when the officers confronted the defendant in the apartment hallway immediately inside the entry, and for that reason the D.C. Circuit said that all of the adjoining rooms to the hallway could be searched. But that was inside the apartment, right? Where did the actual arrest occur here? In other words, the handcuffing. Did Byers come out of the hotel room or dating that? So that's at Suppression Transcript, page 13. It's also referenced at footnote 2 in the government's brief. At the absolute latest here, Mr. Byers was arrested when he was handcuffed, and that occurred in the doorway. I'll point this court to the Boyd decision cited in our brief for a set of facts analogous to the ones presented here. In Boyd, police ordered the defendant out of the bedroom, and he was arrested as he exited the bedroom is what this court said, and this court upheld the search of the bedroom and also a closet within the bedroom as a protective sweep under the first prong of Bowie. There's other cases cited throughout our brief that are very similar to the facts presented here. In Moore, which is an 11th Circuit case, the defendant was arrested after he opened the door to the motel room. In that case, the 11th Circuit affirmed searches under the beds and of the motel room's bathroom. Before you go to the rest of the cases, let me ask you this. Is there a finding by the district court as to where the Byers was handcuffed? Because you're both citing transcripts as though we're finding facts here, and we're reviewing, of course, a record that was already made and findings that were made. Did the district court make a finding about where Byers was physically taken into custody? No, Your Honor, there was no finding by the district court about when handcuffs were placed on Mr. Byers or, for that matter, the legal decision of when he was under arrest for Fourth Amendment purposes. The closest thing... The judge didn't rely on your theory. You don't seem... Your first theory is not the district court's theory, so the judge was relying on reasonable belief. But he did find the defendant was told to exit the room. This is Gargis, and she was escorted a few feet around the corner, and then it says the police commanded Byers to come out of the room, and he did so without incident. That's correct, Your Honor, and that's the... Is that a finding about where he was physically apprehended, or do we just have no finding on that point? I think it's, at minimum, a finding of when Mr. Byers was arrested for purposes of the Fourth Amendment, which was at the time he was being commanded while he was present inside the motel room to exit the motel room by the officers. There's a call that says that the Bowie authority stems from the place where the arrestee was located and when he was commanded, even if the officers weren't physically there. As I understand Bowie, it's about safety of the officers, and so I'm wondering, even if there was a constructive entry or a seizure of this person while he was in a house or a motel room, does that authorize police to make an entry that they didn't otherwise make? I think I missed the initial part of your question there, but I believe you asked for cases. Well, I'm saying whether you have a case or not, you could just answer the question analytically. Bowie is about safety of the officers and their ability to protect themselves in the vicinity of an arrest. You seem to be saying if police order somebody who's in a house to come out to the front yard, then they've constructively entered or they've seized the person while he was in the house because he had to comply with the command. But does it follow that Bowie then allows the officers to enter the house after they've apprehended the person in the front yard because they initially commanded him while he was in the house, or is Bowie limited to the areas immediately adjoining the physical location of the officers? That's the question, whether you have a case or just an answer. Well, I think it depends not so much on the location of the officers as much as where the individual was, the suspect was, when he or she was arrested. Council, Bowie's about the safety of the officers, so the location of the officers has to matter. If you want to get into Prong, well, if you want to get into Bowie at all, I think, doesn't it? I mean, that's the entire foundation of that case, as I understand it. So it seems to me that the key issue really is the location of the officers. The officer's safety is paramount, Judge Kobes, but the officer's safety is dependent on where from the suspect is coming. And so in this case, the officer's safety is hinging on what's inside that motel room. Well, I mean, you agree that the officers could have entered the hotel room here and conducted the arrest of buyers, right? Yes, Your Honor. And presumably, they didn't sort of protect their own safety. Likely, although I don't know if that's apparently right. Well, didn't they minimize the threat to their own safety then by being outside? And then why does Bowie kick in to let them search the room if they made the initial decision that their safety was better served by staying outside? And all they had to do was arrest Mr. Byers and leave. The reason Bowie kicks in and the reason why the first Prong of Bowie exists is that the officers do not know the threats present in those immediately adjoining areas, those areas where a danger is most likely to present itself. And so the officers could have stood outside in the hallway for 10 seconds with Mr. Byers here and had another Confederate exit. And if they didn't sweep the room, they wouldn't have known that was a possibility. And for that reason, the search was consistent with Bowie. I'll quickly just note the Moore case. Let me ask you, is the immediately adjoining area in your mind the bathroom or the entire hotel room? Well, so again, it hinges on the place of arrest and whether the court believes the place of arrest was in the middle of the hotel room. In your view, where is immediately adjoining in this case? Immediately adjoining in this case is the bathroom. If this court were to determine that he was handcuffed in the doorway and that is the place of arrest, then it would be the entire motel room given the dimensions of the motel room, which are apparent from Exhibit 2A. Mr. Byers would have had to walk past the bathroom as he exited the room. The officers testified nobody could be seen or you could not see the entire bathroom. And again, in Exhibit 2A, you can see the doorway into the bathroom from the door of the motel room. So let me ask you, does the baby matter in your argument at this point? Well, it doesn't under the first prong of Bowie. Just because under that prong, the officers didn't need probable cause or reasonable suspicion. They were just authorized to search as a matter, a precautionary matter. Under the second prong of Bowie... Before you go to the second prong, I wanted to ask one more question on the first prong and then let you get into reasonable suspicion. But do you have any case, I don't think so from the briefs, but I wanted to get your view on this. Is there any case where officers arrested a person outside of a home or apartment or a motel room, outside of the quote-unquote home and then were held to have authority under the first prong of Bowie to make an entry where the physical arrest occurred outside and then they were able to enter without reasonable suspicion based on the first prong of Bowie? The closest case that comes immediately to mind is a case called Lay from the Fourth Circuit. In that case, the officers were outside of the one-bedroom apartment in that case. The defendant opened the door and he was ordered down to the ground. And in that case, the officers continued into the apartment after ordering the defendant down to the ground, entered a bedroom 15 feet away. And in that case, in a per curiam opinion, the Fourth Circuit affirmed a search of the bedroom that was 15 feet away and also a locker that was inside of that bedroom that was large enough. The defendant was on the ground inside or outside the door? That is not clear from the opinion or at least not from my recollection of the opinion. I believe the opinion just says the defendant opened the door and he was ordered down. So he could have been inside the door. But we'll look at it. U.S. v. Lay, L.A.Y.? L.A.Y., that's correct, Your Honor. Other cases that are analogous more from the Eleventh Circuit, I'll point out, is where a defendant was arrested as he opened the door to a motel room. Not more, but that could mean he was, if he was, as he was opening it, he was inside the room. So that doesn't sound like a case where he was outside. That's correct, Your Honor. That's correct. You want to address reasonable belief and if you want to defend the district court's rationale? I will, Your Honor. And then just briefly, I'll mention the emergency aid exception if I have enough time. Under Buie's second prong, the officers were permitted to search the motel room here because they did have a reasonable belief that a person presenting a danger to either the officers or any other person on the arrest scene was inside. As the district court said, this is a fact-specific determination, but the district court's facts that it was relying on this case are on par with those relied on by this court in prior cases. So, for example, the district court pointed out that Mr. Byers lingered inside the motel room where the police officers could not see him initially. That's similar to the Alatorre case. Counsel, Alatorre had several different factors, didn't it? I mean, that led to the ultimate decision in that case. And I mean, not responding immediately, I don't think, gets you to Alatorre. Do you agree with that? I mean, you're far short of what we had in Alatorre. I do agree that that's not the only fact that the court relied on in Alatorre. And that, again, it is a fact-specific determination and it will depend on all of the circumstances here. But I do think there are other facts that do make this case similar to Alatorre. Well, give us all the facts instead of citing cases, since it's so fact-specific. What is the overall fact pattern that you say amounts to reasonable belief that the room was harboring another person? Of course, Your Honor. I think the most persuasive fact here is that the officers were told via this tip that there would be two people in the room. And then they arrived to the room and there is a third person in the room, a baby. And the officers... But they find that out after they take two people out, right? That's correct. But they also could have learned at that point there were other individuals or they could have went inside. But was there any evidence that there was anyone other than the baby? I mean, one of the people brought out said there's a baby in there. There's no indication there were other criminals involved in this at all. I mean, there's a baby in there. That's okay. But that is analogous to other cases where in this court, for example, in Waters, a girlfriend of the defendant's walked out, said, it's only me and the defendant inside. And yet there was reasonable belief. Well, I think Judge Palatine asked you to give the other facts. If he will give me permission, I'd like to hear the rest. I interrupted you. But what is the total list without my interruption of what the facts are? Of course, Your Honor. Judge Palatine would give me a moment here. No, I'd like to hear them. So please proceed. We'll let Mr. McGough respond. So the facts that I had prepared for the court today, Your Honor, are first of all, as I mentioned, that Mr. Byers lingered inside where the police officers could not see him, suggesting that another person could hide as well. Police officers were worried that somebody could do harm to them or the baby inside. Again, they were not aware of the baby previously, a baby they could not see or hear from the doorway. In this case, there were two distinct parts of the room divided by a partial wall, making parts of the room not visible to the officers. The bathroom itself was not visible to the officers. And then finally, Mr. Byers had a history of assaultive behavior. He was wanted for false imprisonment. I think that's all I had here. And then finally, I'll just mention the officers didn't look in any bags or any containers. They relied only on what was in their point of view. As I said, the United States would also argue that the emergency aid exception applies. Was the history of assaultive behavior known to the arresting officers? It was, Your Honor. They weren't familiar with Mr. Byers. And what else do we know about the arrest warrant for false imprisonment, if anything? Nothing beyond that Mr. Byers was wanted for false imprisonment, Your Honor. So there was an active arrest warrant for false imprisonment. That's what we know? That's correct. And was Gargis free to go back into the room after Byers was handcuffed? Or was she detained for any reason? She was not allowed to go into the room only because the officers first wanted to conduct this sweep to make sure that other people and weapons were inside so that she could then go in and care for the baby. Well, their intention was to let her go in and care for the baby? I believe so, Your Honor. I don't have a specific citation to that, but I believe at least one officer said their plan was to let Ms. Gargis go back into the room once they searched it for other persons and weapons. Was that a Terry stop of the appellant in this case? Or how would you characterize their detention of her? I beg your pardon, Judge Collin. If I'm going overboard, I withdraw the question. Go ahead, Mr. Exley. Judge Copes, the detention of Ms. Gargis, from my understanding of the record here, was that she was asked to leave the hotel room after she answered the door and said Mr. Byers was inside and was escorted down the hallway solely so that the officers could complete their arrest of Mr. Byers. So was she detained? She was kept down the hallway. Was she detained for Fourth Amendment purposes? It's not clear from the record, Your Honor. Well, what's your view? I mean, it's a legal question. Well, it's hard to tell here because when it... drug paraphernalia, she was at that point detained, I believe. But prior to that... But you're talking about the interim when the officers were conducting the search. Was she detained? And if so, on what basis? It's not clear from the record whether she was detained or not. I apologize for the lack of... Thank you, Judge Collin. Thank you. Well, it'd be a Michigan against summer situation where you can detain the people in the house while you're doing the search to make sure there's no interference in safety and so forth. But one last area. I saw the government argued in the district court that the inevitable discovery doctrine should apply. The district court didn't reach that, of course, and it's not renewed on appeal. But I guess that's a possible live issue in the district court. Is there any... There's no point in going over that here, is there? You haven't raised that as an alternative ground for affirmance. No, Your Honor. Again, from my review of the record, did not continue to persist in that argument. Thought that the district court would need to make additional findings if remand was required by this court. Again, I don't think remand is necessary, but if so, I believe that would be reasserted there. Because Gargis was eventually arrested for child endangerment, as I understand it, and it's not clear whether that would have occurred without the sweep, whether just based on questioning of her and the fact that she had no knowledge of... There was some concern about whether she was the proper custodian of the child, as I understand it, but it's unclear whether that would have led to charges or an arrest of her and, therefore, an inevitable entry to the room to take care of the child and so forth. That would have to be developed further, you're saying? That's correct, Your Honor. Okay. Anything else, Judge Kopas? We can take whatever time we need. No, Judge Carlton, thank you. All right, Mr. McGow, we'll hear from you in rebuttal. Thank you. The government argues that once the officers command somebody to come out, that that could constitute an arrest for purposes of the first prong of buoy, and that, taken to its logical extreme, would allow officers to stay outside of a home with a bullhorn and order people to come outside of the home, and because they commanded them, they could go into the home and search it. I think that the question of what is immediately adjoining needs to be strictly interpreted, and based upon the record that was presented by the government at the hearing, number one, it's unclear where the arrest occurs. As indicated by counsel on page 13, the first officer that testified did, in fact, say on cross-examination that Mr. Byers was handcuffed in the doorway of the hotel room. But, counsel, the Tungmas case under the D.C. Circuit says, look, it was a straight shot from the location of the arrest to where the search occurred, and I've looked at the government's exhibits here. Whether it occurred right inside the door, under the door, in the threshold, right outside, it is a straight shot and not very far from that door to the bathroom, certainly, and to the main part of the hotel room. It's a small hotel room, and that's where Mr. Byers was located. So what is so unreasonable about officers who are in a contained hallway with no immediate escape from going in there and checking? That seems to be kind of what Buoy Prong One is about. Well, in order to cross that threshold, in order to cross that threshold of a room that, number one, does not belong to Byers, there's no evidence that he was a registered owner, my client is the name on the hotel, Does that matter if Byers was the suspect and the potential danger was related to his arrest? It might. I don't know. I think it matters from a standpoint. I think one of your questions earlier to counsel was, couldn't they have just gone in the room and have arrested him in the room? And I think it mattered, certainly, in that situation. But I think that the question of what is in his immediate adjoining area, I think it does weigh on that that he's not the registered owner of the hotel room. Oh, but his immediate adjoining area is further into the room than hers, right? She's out of the room. She's out of the room and he's either out of the room, according to some of the officers' testimony when he's arrested, or he's in the doorway. But the testimony is not clear from the number of officers that testified about where he's actually handcuffed. So do you agree that he was in the doorway or not? I don't know. I don't know. All right, so you think that's not clear? You think we don't have a finding on that? That's correct, and I think that's part of the reason. I'm just speculating, but I suspect that's part of the reason that the district court didn't make that finding. Because when you look at how Officer Burns testified on direct examination, Byers came out of the room and then was apprehended. On cross-examination, he corrected me and said, no, he was handcuffed in the doorway. The other officers that came in and testified all testified he came out of the room, they took him around the hallway and detained him, or around the court. Those aren't necessarily inconsistent, right? I mean, he could have been grabbed at the doorway and then proceeded out. And I agree with that. What do we do if that's an important fact here? I mean, what if the permissibility of the prong one buoy sweep depends on whether he was in the room or not? I think since it's the government's burden of proof, you determine that the government didn't meet their burden of proof to support the constitutionality of the protective sweep. Yeah, you could, but I'm not sure whether they failed to meet the burden or whether we just don't have a finding. It depends upon if the finding is based upon a conflict in the record that does bear directly on the government's failure of the burden. Well, there are a lot of times conflicts in the record and the judge has to choose which version is more accurate and you can meet your burden even with conflicting evidence. Would a remand be appropriate, counsel, or permissible? Well, I don't know. It's a good question. I don't know why it would be impermissible. On a de novo review, I think that this court could certainly remand it. What about reasonable suspicion? Why isn't it enough that you have an arrestee here with wanted for false imprisonment, which is a crime that involves holding another person against her will or his will, presumably, a history of assaultive behavior, a tip that said two people would be in the room, and then immediate information that no, there are actually at least three. Why isn't that enough to meet the Bowie standard? Well, the protective sweep is to protect officers from another person, not from the individual that's being detained or arrested or apprehended. It's to protect them from another person. So the fact that Mr. Byers, who is out of the doorway and moved down the hall, the fact that he's got a history of assaultive behavior is really irrelevant to the determination of whether or not this protective sweep is constitutionally permissible or not. It would be one thing, as I argued at the district court level, it would be one thing if the government had evidence that he runs with a crowd that have assaultive behaviors or he has known associates that he's currently hanging out with. That then would be relevant or if his assaultive behavior somehow included other individuals that officers didn't know if he was with at the time. There was no evidence of any of that at the hearing. All they had was they asked each officer on direct examination, are you aware that he has a history of assaultive behavior? No definition of what that was, no definition in any way to support any notion that there were other individuals that were harbored in that area that posed a danger to officers. He didn't pose a danger to officers when he was apprehended and Bowie and those in the cases that further discussed the protective sweep don't consider the dangerousness of the individual that is apprehended. It's all about officer safety for the unknown lurker and that's just not here. The government talked about when Judge Colton, you were asking about the list of facts that supported the finding, the government said that, well, he lingered. There's absolutely no evidence of that at all. The evidence was that Ms. Gargas was ordered out, she came out, that then they ordered him out, he came out, and those two individuals were apprehended and then the search happened. And I would further say in regards to the baby that that is not a relevant factor in determining anything about the protective sweep. There's no evidence to suggest that the baby was at risk of any harm of anybody. The baby wasn't making any kind of noises. There was no suggestion by hotel staff or the tipster or anybody that the baby or officers were at any real risk or anybody was being harbored in that area and the protective sweep was unconstitutional. One concern I have about the Bowie first prong is that if the rule is that the sweep is permissible if the officers arrest the person right inside the doorway but it's impermissible if they arrest him right outside the doorway. Is there any practical point to that rule? I mean, won't that just lead to training sessions with officers where they're told to step right inside the door and grab the guy and then do your sweep? I think that's right. I think that's right. Does that militate against making a ruling that says if you're one foot outside, it's constitutionally different than if you're one foot inside? Or is that still an important distinction? Well, I think the best way I can answer it is this way, is to say it just comes down to a totality of the circumstance. It just comes down to what are the specific facts in the case? I don't know that there's any practical application of making a determination of number of feet or inches in determining what's permissible and what isn't. I think it's just fact-specific as to what is the immediate adjoining area. My concern is, though, that the law is rife with concern about the threshold of the home. And it does make a difference a lot of times whether you're outside the threshold or inside the threshold. But what's significant to that inquiry, at least to our argument, is officers are outside. And we don't know fully where Mr. Byers is at the time that he's cuffed. But, counsel, if you go with the specific facts of the case, you don't have a great case here, it seems to me, because that bathroom is close. I've looked at the government's exhibits. And that corner into the main part of the hotel room is close. You know, it's not like you're going into a 4,000-foot square home and searching the entire main floor. You're talking about your average sort of Best Western Motel 6. And if you say the inside threshold, outside threshold, inside the door doesn't matter, it seems to me you've got a very confined space here. And you've got at least two locations, the corner and the bathroom, where someone could emerge immediately. Well, and I certainly understand that point, Your Honor. And I think that it's incumbent upon the court, if the case turns on that first prong, it's incumbent upon the court to determine, is there a difference between what is, quote, close and what is immediately adjoining the area? I can't make that determination. I think that's incumbent upon you guys to do that. Yeah, that's not an easy call. I think I'm out of time unless there's any other questions. Very well, thank you for your argument. Thank you to both counsel. We continued the argument originally when Mr. McGough was unavailable. I'm sorry, we took it off the argument calendar when Mr. McGough was unavailable. But on further review, the court thought argument would be helpful. And so we appreciate your time this afternoon. The case is resubmitted and the court will file a decision in due course. Thank you. Thank you, Your Honor. That concludes the session for this afternoon. The court will recess until further notice.